IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ADAM HOLLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-25-01485-JD |
| | ) |
| BENJAMIN LEPAK, in his official | ) |
| capacity as Acting Oklahoma Secretary | ) |
| of State, and OKLAHOMA STATE | ) |
| ELECTION BOARD, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff Adam Holley's ("Holley") Response to Show Cause Order Regarding Subject Matter Jurisdiction. ("Response") [Doc. No. 6]. Because the Court has "an independent obligation to determine whether subject-matter jurisdiction exists" and may raise the issue sua sponte at any time, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), the Court previously ordered Holley to show cause for why his Complaint for Violation of Civil Rights ("Complaint") [Doc. No. 1] should not be dismissed for lack of subject matter jurisdiction [Doc. No. 5].

Having reviewed Holley's Response, the Court confirms that Holley's Complaint plainly admits a lack of standing,[1] and that requires the Court to dismiss the Complaint

---

[1] Holley lacks standing both because he has not yet been injured and because his injury is hypothetical and speculative—so it could also be said that his claim is not "ripe." While ripeness and standing are distinct legal concepts, "the Article III standing and ripeness issues in this case 'boil down to the same question.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*,

without prejudice. *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").

I. **LEGAL STANDARDS**

Federal courts are courts of limited jurisdiction, meaning all claims filed in federal court must contain a statutory basis of jurisdiction. *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). Thus, "there is a presumption against [federal subject matter] jurisdiction." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). And the burden of proving subject matter jurisdiction lies with the plaintiff, as "it is settled that the jurisdiction of a court of the United States must appear from distinct allegations, or from facts clearly proven, and is not to be established argumentatively or by mere inference." *Thomas v. Bd. of Trs. of Ohio State Univ.*, 195 U.S. 207, 218 (1904). "Mere conclusory allegations of jurisdiction are not enough" to establish subject matter jurisdiction. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).

Standing is a necessary element of subject matter jurisdiction—one that must be apparent on the face of any complaint. *See Hill*, 702 F.3d at 1224 ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."). Standing mandates that the plaintiff allege an injury that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). These jurisdictional questions are addressed at the

---

549 U.S. 118, 128 n.8 (2007)). And so the Court "use[s] the term 'standing' in this [order]." *Id.*

2

outset of a case "because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim . . . ." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004); *see also* Fed. R. Civ. P. 12(h)(3). Courts may sua sponte address standing. *See Scott v. Allen*, 153 F.4th 1088, 1093 (10th Cir. 2025) (explaining that the district court did not err in sua sponte addressing standing; "[t]he district court not only *can* address its own standing, it *must*." (citation omitted)).

Courts apply a liberal construction to the legal sufficiency of pro se pleadings, applying "a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997). Even so, courts cannot "assume the role of advocate," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), nor can they "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney*, 113 F.3d at 1173–74.

II.     **ANALYSIS**

Holley challenges the constitutionality of "State Question No. 836, Initiative Petition No. 448" by filing this action against the Oklahoma Secretary of State and the Oklahoma State Election Board. Complaint at 4. He claims the initiative's creation of an open primary system would negatively impact "Oklahoma's election integrity and create[] a vulnerability to outside influences effectively changing the landscape of our Constitutional Republic further away from its roots." *Id.* at 4–5. Holley argues that "the State is violating the Fourteenth Amendment," pointing to the Privileges or Immunities Clause, which states that "No State shall make or enforce any law which shall abridge the

privileges or immunities of citizens of the United States." *Id.* at 5 (quoting U.S. Const. amend. XIV, § 1, cl. 2).

Holley also invokes the "core First Amendment rights of political association and assembly," because the initiative would "remove[] any fair association rights of every eligible candidate except the two that collect the most votes, making it possible for either political party to be restricted from being represented." *Id.* Holley urges that "[t]he proposed 'open primary' allows the top two primary vote-getters—regardless of party— to monopolize the November general-election ballot, enabling the complete exclusion of an entire party." *Id.* at 6. Finally, Holley ties his First Amendment association arguments to the Supreme Court's re-affirmation of that amendment's incorporation to the States through the Fourteenth Amendment's Due Process Clause. *Id.* at 5–6 (citing *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307 (1964)).

The Court takes Holley at his word when he alleges that State Question No. 836 is a "proposed . . . initiative" that, "as drafted," "will," "[i]f . . . approved and implemented," cause him injury.[2] Complaint at 5, 10. Since at least 1896, the Supreme Court has held that "a court [in] equity will not enjoin" a "legislative act[]" until the act is "passed," at which point "the jurisdiction of the courts may then be invoked for the

---

[2] In taking Holley "at his word," the Court does not suggest that Holley's status as a registered voter would necessarily give him standing even if the initiative did become law. Although the Court has no occasion to examine that question, the Court notes that other challenges of this kind have come from the political parties themselves, rather than from individual voters. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) (holding that Washington State's open primary system, passed via ballot initiative, did not infringe upon the First Amendment associational rights of the state's Republican, Democratic, and Libertarian parties).

protection of private rights that may be violated by its enforcement." *New Orleans Water Works Co. v. City of New Orleans*, 164 U.S. 471, 481 (1896).[3] The Court may not pass upon the constitutionality of an unenacted law. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985))).

In his Response, Holley urges that the word "make" in the Privileges or Immunities Clause of the Fourteenth Amendment covers Oklahoma's act of allowing the initiative to undergo the process by which it may appear on the ballot for a vote. Response at 3. That argument, though innovative, is incorrect. A governmental entity does not "make" a law within the meaning of the Fourteenth Amendment until it is enacted. Were it otherwise, the Supreme Court in *New Orleans Water Works Co.* would not have held that "no decree c[ould] be properly rendered that will affect the rights of the beneficiaries named in the ordinances enacted before this suit was commenced." 164 U.S. at 481–82.

Holley also argues in his Response that Oklahoma's "ongoing administration of the initiative-and-election machinery . . . imposes concrete burdens and forces [him] to

---

[3] In fact, the underlying principle goes back to 1793, when President George Washington sent to the Supreme Court—through his Secretary of State, Thomas Jefferson—a series of twenty-nine legal questions on the meaning of the Constitution. The Justices responded in relevant part that separation of powers considerations weighed heavily "against the propriety of [their] extra-judicially deciding the question[s] alluded to." *See* The Letter of the Supreme Court Justices to President Washington (Aug. 8, 1793), https://founders.archives.gov/documents/Washington/05-13-02-0263.

take immediate protective action to preserve his constitutional rights." Response at 2–3. But an unenacted law facing an uncertain election outcome does not impose any "concrete burden" or need to "preserve" one's "constitutional rights." Rather, Holley explicitly pleads a "conjectural or hypothetical" harm over which this Court has no jurisdiction. *Lujan*, 504 U.S. at 560.[4]

Finally, Holley argues for injury in the form of "costs and time already incurred" in pursuing this lawsuit. Response at 3. But those injuries are facially "self-inflicted" and thus "not fairly traceable" to the actions of the Defendants. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

Although the pleading stage demands only a minimal evidentiary burden for jurisdiction, *Lujan*, 504 U.S. at 561, the Court readily ascertains that no future evidentiary showing can transform an unenacted ballot initiative's substance into a non-contingent harm. The Complaint facially admits a lack of standing, and so this Court lacks subject matter jurisdiction under Article III, section 2 of the United States Constitution.

---

[4] Holley further urges that the Defendants are "presently enabling the making of the challenged initiative measure through state-administered election machinery in a manner that imminently threatens deprivation of Plaintiff's federally protected rights." Response at 3. To whatever extent Holley means to challenge the constitutionality of Oklahoma's initiative making process (rather than the initiative itself), the Complaint fails to direct the Court to any statute, regulation, or specific administrative practice that violates a provision of the United States Constitution. *See generally* Complaint (containing no citation to or description of any Oklahoma statute, regulation, or specific administrative practice).

### III. CONCLUSION

For these reasons, the Court DISMISSES WITHOUT PREJUDICE Plaintiff Adam Holley's Complaint [Doc. No. 1] for lack of subject matter jurisdiction. A separate judgment will follow.

IT IS SO ORDERED this 6th day of January 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE